O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARLOS ROBLES, ETC., | ) | Case No. EDCV 14-02362-VAP (SPx) |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER GRANTING MOTION TO DISMISS (DOC. NO. 32)** |
| AMPAM PARKS MECHANICAL, INC., ETC., ET AL, | ) ) ) | **[Motion filed on March 30, 2015]** |
| Defendants. | ) ) | |
| _____ | ) | |

     Plaintiff Carlos Robles applied for a job with AMPAM
Parks Mechanical, Inc. ("AMPAM") on December 11, 2013.
(Doc. No. 31 ("FAC") ¶ 4.)  To assist it in deciding
whether to offer him employment, AMPAM obtained his
background report from A-Check Global, Inc. ("A-Check").
(FAC ¶ 9.)

     Plaintiff alleges A-Check violated the Fair Credit
Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., when
it furnished his and other job applicants' background

reports to AMPAM, because A-Check did not first obtain the proper certifications and disclosures. (<u>Id.</u> ¶ 37.)

A-Check filed the instant Motion to Dismiss Plaintiff's First Amended Complaint on March 30, 2015. (<u>See</u> Doc. No. 32 ("Motion").) The matter came before the Court for hearing on April 27, 2015. After considering the papers filed in support of, and in opposition to, the Motion, and the arguments put forth at the hearing, the Court GRANTS the Motion and DISMISSES Plaintiff's FAC WITH PREJUDICE.

## I. BACKGROUND

**A.  Procedural Background**

Plaintiff filed a class action complaint against Defendants AMPAM and A-Check on November 17, 2014. (Doc. No. 1 ("Complaint").) Plaintiff later agreed to submit his claims against AMPAM to arbitration and dismissed AMPAM from this lawsuit. (Doc. Nos. 23-24.)

The remaining Defendant, A-Check, filed a motion to dismiss Plaintiff's Complaint. (Doc. No. 12.) The Court granted that motion because Plaintiff only sought damages for willful violations of the FCRA but failed to allege willfulness.  (<u>See</u> Doc. No. 26 ("MTD I Order") at 4-5.) The Court also granted Plaintiff leave to amend to allege willfulness. (<u>Id.</u> at 6.)

On March 16, 2015, Plaintiff filed the FAC.  On March 30, 2015, A-Check filed the instant Motion.  Plaintiff opposed (see Doc. No. 33 ("Opposition")), and A-Check replied (see Doc. No. 36 ("Reply")).

## B.   Documents Not Attached to the Complaint

A-Check relies in the instant Motion on exhibits it attached to its prior motion to dismiss. (See Doc. Nos. 18, 35.)[1] "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading.'" Parrino v. FHP, Inc., 146 F.3d 699, 705 (9th Cir. 1998), superseded by statute on other grounds as stated in Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 681-82 (9th Cir. 2006).

A-Check provides the FCRA certifications and disclosures that form the basis of Plaintiff's legal claims as support for its Motion. (See Doc. No. 35, Exhs. A, B.)  Plaintiff alleged the contents of these exhibits in his FAC (FAC ¶¶ 15, 16), and he does not

---

[1]Originally, these exhibits appeared at Doc. No. 18 on the docket.  The Court ordered this document stricken because the exhibits contained "Plaintiff's sensitive information, including his home addresses and the results of his background check." (Doc. No. 34.)  The Court provided A-Check two days to re-file the exhibits with appropriate redactions.  (Id.)  The exhibits now appear on the docket at Doc. No. 35.

dispute their authenticity (<u>see</u> Opposition at 6-7 (citing
and quoting from them)).   Therefore, the Court considers
these exhibits in deciding the Motion.

**C.   Allegations in the FAC**

Plaintiff applied for a job with AMPAM on December
11, 2013.  (FAC ¶ 4.)  Shortly after, AMPAM requested
Plaintiff's background report from A-Check to assist it
in deciding whether or not to offer Plaintiff employment.
(<u>Id.</u> ¶ 4.)

A-Check has a two-step process for furnishing
background reports.  Businesses seeking background
reports from A-Check, like AMPAM, must first sign A-
Check's "FCRA Compliance Agreement."  (<u>Id.</u> ¶ 15.)  This
Compliance Agreement requires a business requesting a
background report to certify, <u>inter alia</u>, that,

> (A) [b]efore requesting each employment report
> from A-Check America:
>> (i) a clear and conspicuous disclosure will
>> be made in writing to the consumer who is
>> the subject of the report to be procured in
>> a document that consists solely of the
>> disclosure, that a Consumer Report may be
>> procured for the employment decision; and

1          (ii) the consumer has authorized in writing

2          the procurement of the Consumer Report by

3          the requester.

4

5   (Id. ¶ 15; Doc. No. 18, Exh. A ("Compliance Agreement")

6   at 2.)  The Compliance Agreement states it "constitutes

7   all conditions of service and of reporting, present and

8   future, and applies to all reports made by A-Check."

9   (Id.)[2]  Businesses sign the Compliance Agreement once, at

10  the start of their relationship with A-Check.

11

12      A-Check has a second step before it furnishes a

13  specific person's background report.  Businesses request

14  a specific person's background report through A-Check's

15  Website.  (FAC ¶ 16.)  That Website requires a business

16  to "click a box indicating that they agree that the

17  information will be used in compliance with the FCRA."

18  (Id.)  Only then does A-Check furnish the background

19  report.  (Id.)  Specifically, the Website states, and the

20  requesting business agrees,

21

22      [t]he information [sought] is to be used in

23      compliance with the [FCRA] and all other

24      applicable laws.  Particularly, [the person is]

25

26

27      ─────────────────

        [2]AMPAM signed the Compliance Agreement on April 20,
28  2005.  (Compliance Agreement at 1-2; FAC ¶ 15.)

1    requesting this information under guidelines of
2    Section 604 and all of its requirements.

3

4  (Doc. No. 18, Exh. B ("Website").)

5

6    Although AMPAM signed the Compliance Agreement and
7  clicked the box on the Website, Plaintiff alleges AMPAM
8  did not comply with the FCRA's disclosure requirements.
9  (FAC ¶¶ 17-18.)  AMPAM required Plaintiff and other
10 prospective employees to sign a background report
11 disclosure form contravening the FCRA's requirement that
12 this form "consist[] solely of the disclosure."  (Id. ¶
13 17 (citing 15 U.S.C. § 1681b(b)(2)(A)(ii)).)

14

15                    **II. LEGAL STANDARD**
16    Federal Rule of Civil Procedure 12(b)(6) allows a
17 party to bring a motion to dismiss for failure to state a
18 claim upon which relief can be granted.  Rule 12(b)(6) is
19 read in conjunction with Rule 8(a), which requires only a
20 short and plain statement of the claim showing that the
21 pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2);
22 Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that
23 the Federal Rules require that a plaintiff provide "'a
24 short and plain statement of the claim' that will give
25 the defendant fair notice of what the plaintiff's claim
26 is and the grounds upon which it rests" (quoting Fed. R.
27 Civ. P. 8(a)(2))); Bell Atl. Corp. v. Twombly, 550 U.S.

28

544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint -- as well as any reasonable inferences to be drawn from them -- as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level."  Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where

1  a complaint pleads facts that are 'merely consistent
2  with' a defendant's liability, it stops short of the line
3  between possibility and plausibility of 'entitlement to
4  relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550
5  U.S. at 556). The Ninth Circuit has clarified that (1) a
6  complaint must "contain sufficient allegations of
7  underlying facts to give fair notice and to enable the
8  opposing party to defend itself effectively," and (2)
9  "the factual allegations that are taken as true must
10 plausibly suggest an entitlement to relief, such that it
11 is not unfair to require the opposing party to be
12 subjected to the expense of discovery and continued
13 litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th
14 Cir. 2011).

15

16                    **III. DISCUSSION**

17     Plaintiff alleges (1) A-Check breached the FCRA's
18 certification and disclosure requirement, and (2) did so
19 willfully. The FCRA provides a private right of action
20 against businesses like A-Check that furnish background
21 reports but fail to comply with its terms. Safeco Ins.
22 Co. of Am. v. Burr, 551 U.S. 47, 53 (2007). "If a
23 violation [of the FCRA] is negligent, the affected
24 consumer is entitled to actual damages. If willful,
25 however, the consumer may have actual damages, or
26 statutory damages ranging from $100 to $1,000, and even
27 punitive damages." Id. (citations omitted). Plaintiff
28

1   only alleges A-Check's violation of the FCRA was willful.

2

3       The Court holds Plaintiff has failed to plead

4   sufficiently that A-Check willfully breached the FCRA.[3]

5   It therefore GRANTS the Motion.

6

7   **A.   Any Breach by A-Check Was Not Willful**

8       Under the FCRA, A-Check could furnish Plaintiff's

9   background report "only if" AMPAM had certified to A-

10  Check that it "has complied" with the disclosure

11  requirement.  15 U.S.C. § 1681b(b)(1)(A)(i).[4]  The FCRA

12  disclosure requirement reads as follows:

13  _____

14      [3]The question of whether a defendant's conduct was
    willful can be a factual one.  See Syed v. M-I LLC, No.
15  14-742, 2014 WL 5426862, at *2 n.1 (E.D. Cal. Oct. 23,
    2014).  Here, however, the Court asks whether A-Check's
16  reading of the FCRA was willful, as in whether it was
    "objectively unreasonable."  Id. at *2 (citing Safeco,
17  551 U.S. at 71).  The question is therefore a question of
    law this Court can decide on a motion to dismiss.  Id.
18
        [4]The relevant part of the FCRA reads,
19
        A consumer reporting agency may furnish a
20      consumer report for employment purposes only if
            (A) the person who obtains such report from
21          the agency certifies to the agency that –
                (i) the person has complied with [the
22              disclosure requirement] . . . .

23  15 U.S.C. § 1681b(b)(1)(A)(i).  Plaintiff alleges, and A-
    Check does not dispute, that the following FCRA
24  definitions apply in this case:
    •   AMPAM and other employers are a "person," 15 U.S.C. §
25      1681a(b);
    •   A-Check is a "consumer reporting agency," 15 U.S.C. §
26      1681a(f);
    •   Plaintiff is a "consumer," 15 U.S.C. § 1681a(c);
27  •   and the background report A-Check furnished AMPAM is
        a "consumer report," 15 U.S.C. § 1681a(d).
28  (FAC ¶ 8.)

1         [A] person may not procure a consumer report, or

2         cause a consumer report to be procured, for

3         employment purposes with respect to any

4         consumer, unless --

5                (i) <u>a clear and conspicuous disclosure has</u>

6                <u>been made in writing</u> to the consumer at any

7                time before the report is procured or caused

8                to be procured, <u>in a document that consists</u>

9                <u>solely of the disclosure</u>, that a consumer

10               report may be obtained for employment

11               purposes . . . .

12

13 15 U.S.C. § 1681b(b)(2)(A)(i) (emphasis added).

14

15     Whether AMPAM failed to meet the disclosure

16 requirement is not at issue here. The only issue is

17 whether A-Check obtained the proper certification from

18 AMPAM that it complied with the disclosure requirement

19 before furnishing Plaintiff's background report.[5]

20

21 _____

22     [5]The Court does not understand Plaintiff to argue
that A-Check is liable for AMPAM's alleged failure to

23 comply with the FCRA. Even if Plaintiff were making that
argument, it is foreclosed by the statute.

24     "The second and third subsections [of 15 U.S.C. §
1681b(b)] both affect users. On the other hand, the

25 first subsection, at issue here, sets forth obligations
that an agency must satisfy before furnishing a consumer

26 report." <u>Obabueki v. Int'l Bus. Machines Corp.</u>, 145 F.
Supp. 2d 371, 393 (S.D.N.Y. 2001) (citation omitted).

27     As an agency that furnished a consumer report, A-
Check can only be liable under the first subsection. <u>See</u>

28 <u>id.</u> at 394.

The key here is the term "has complied."  15 U.S.C. §
1681b(b)(1)(A)(i).  Plaintiff argues it was "objectively
unreasonable for A-Check to rely upon" the Compliance
Agreement as "a one-time prospective, blanket
certification" of the FCRA's disclosure requirement.
(FAC ¶ 25.)  AMPAM cannot certify it "has complied" with
the FCRA prospectively.  Instead, A-Check must have
obtained the required certification from AMPAM each time
AMPAM requested a new background report.  (Id. ¶ 26.)

Plaintiff's reading of the FCRA is correct.
"Prospective certification . . . runs counter to §
1681b(b)(1)'s use of the phrase 'has complied,' which . .
. refer[s] retrospectively to an action already taken.
It makes no sense for [AMPAM] to certify that it 'has
complied' with the FCRA before having done so . . . ."
See Syed v. M-I LLC, No. 14-742, 2014 WL 5426862, at *4
(E.D. Cal. Oct. 23, 2014).  AMPAM needed to have complied
with the FCRA's disclosure requirement as to each
background report before certifying that it "has
complied" with the FCRA.  Id.

A-Check argues that the language on its Website,
which AMPAM agreed to before obtaining each new
background report, meets this requirement.  (Motion at 7-
8.)  Alternatively, A-Check argues this language shows it
did not willfully violate the FCRA.  (Id. at 8-9.)

Plaintiff only alleges A-Check's violation of the FCRA was willful. (FAC ¶¶ 23-26.) Therefore, even assuming the Website's language contravened the FCRA, a finding that this contravention was not willful disposes of this lawsuit.

In Safeco, the Supreme Court held that the FCRA's use of the term "willfully" requires a plaintiff to show that the defendant's conduct was intentional or reckless. 551 U.S. at 57. Recklessness, the Court held, consists of an "action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." Id. at 68 (citation and internal quotation marks omitted). Therefore, A-Check did not act in reckless disregard of the FCRA "unless the action is not only a violation under a reasonable reading of the statute's terms, but . . . [it] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69; see also Kirchner v. Shred-it USA, Inc., No 14-1437, 2014 WL 6685210, at *1 (E.D. Cal. Nov. 25, 2014) ("A defendant's violation of the FCRA is not reckless simply because its understanding of a statutory obligation is erroneous; instead, a plaintiff must allege, at a minimum, that the defendant's reading of the FCRA is objectively unreasonable.").

Plaintiff cannot show A-Check willfully breached the FCRA.   A-Check required AMPAM to certify on its Website each time AMPAM requested a new background report that it had complied with the FCRA in general, and specifically the guidelines of Section 604.

Plaintiff points out "Section 604 refers to [a] lengthy section of the FCRA."  (Opposition at 7-8.) Plaintiff does not deny, however, that this Section includes the disclosure requirement at issue here.  (Id.) A-Check therefore required AMPAM to certify it "has complied" with the disclosure requirement before furnishing the background report.

Plaintiff has not shown how the Website's language "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  Safeco, 551 U.S. at 69.  Plaintiff's reliance on Syed and Kirchner is misplaced.  First, whatever guidance these cases provide, they could not have done so at the time A-Check furnished Plaintiff's background report because they were decided in 2014.  Second, both are distinguishable.  In Syed, the defendant obtained only a "prospective, blanket certification."  2014 WL 5426862, at *4.  The second certification A-Check obtained on its Website was not present in Syed.  In Kirchner, the Court relied only on the allegations in the

plaintiff's pleading because plaintiff disputed the
authenticity of the certification the defendant provided.
See 2014 WL 6685210, at *3.

Here, in contrast, A-Check used a two-step
certification.  First, A-Check used the Compliance
Agreement, which mirrored the statutory language.
Second, at the time AMPAM was obtaining a background
report, A-Check's Website required it to certify that it
had complied with the FCRA's various requirements,
including the disclosure requirement.

Plaintiff can point to no authority suggesting A-
Check's certification process was an objectively
unreasonable reading of the FCRA.  The statutory
language, while requiring certification for each
background report, does not indicate how much detail each
successive certification must have.  A-Check's additional
certification through its Website may not be the most
specific, but its placement does not constitute an
objectively unreasonable reading of the FCRA's
requirements.

The Court need not address what certification the
FCRA actually requires because the certification that A-
Check obtained did not evince a willful breach of the
FCRA.  The Court therefore GRANTS the Motion.

**B.    The Court DENIES Leave to Amend**

If the Court determines that a complaint or certain
claims should be dismissed, it must then decide whether
to grant leave to amend.  Under Rule 15(a) of the Federal
Rules of Civil Procedure, leave to amend "shall be freely
given when justice so requires," bearing in mind "the
underlying purpose of Rule 15 to facilitate decisions on
the merits, rather than on the pleadings or
technicalities."  Lopez v. Smith, 203 F.3d 1122, 1127
(9th Cir. 2000) (en banc) (internal quotation marks and
alterations omitted).  When dismissing a complaint for
failure to state a claim, "a district court should grant
leave to amend even if no request to amend the pleading
was made, unless it determines that the pleading could
not possibly be cured by the allegation of other facts."
Id. at 1130 (quoting Doe v. United States, 58 F.3d 494,
497 (9th Cir. 1995) (internal quotation marks omitted)).
Accordingly, leave to amend generally shall be denied
only if allowing amendment would unduly prejudice the
opposing party, cause undue delay, or be futile, or if
the moving party has acted in bad faith.  Leadsinger,
Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir.
2008).

Plaintiff "requests the opportunity to allege
additional facts in order to cure any pleading defects
the Court identifies." (Opposition at 8.)  Plaintiff has

now had two chances to allege a willful violation of the FCRA, and he has failed both times.  Plaintiff has not identified any facts that would enable him to successfully allege willfulness.  Alleging willfulness in this case is therefore futile.

Accordingly, the Court finds granting Plaintiff leave to amend would be futile and cause undue delay, and therefore, DENIES Plaintiff leave to amend.

### IV. CONCLUSION

The Court DISMISSES the FAC WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: April 28, 2015

_____
VIRGINIA A. PHILLIPS
United States District Judge